NOT YET SCHEDULED FOR ORAL ARGUMENT

———————————

No. 26-5028

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

FEDERAL TRADE COMMISSION v. META PLATFORMS, INC.

———————————

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————————

**BRIEF FOR TEXAS, ALASKA, ARKANSAS, COLORADO, THE
DISTRICT OF COLUMBIA, DELAWARE, FLORIDA, IDAHO, INDIANA,
IOWA, KANSAS, KENTUCKY, LOUISIANA, MARYLAND, MISSOURI,
MONTANA, NEBRASKA, NEVADA, NEW JERSEY, NORTH DAKOTA,
OHIO, OKLAHOMA, OREGON, PENNSYLVANIA, SOUTH CAROLINA,
SOUTH DAKOTA, TENNESSEE, UTAH, AND WEST VIRGINIA AS
AMICI CURIAE
IN SUPPORT OF APPELLANT**

———————————

KEN PAXTON
Attorney General for the State of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General
for Civil Litigation

THOMAS D. YORK
Chief, Antitrust Division

KATHERINE S. DANNENMAIER
Assistant Attorney General

Texas Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 803-6803

*[Additional counsel listed on signature
page]*

i

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a), amici States certify as follows.

A. **Parties and Amici**. Except for the following, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the Opening Brief for the Federal Trade Commission, filed on May 22, 2026. In addition, the following amici subsequently appeared in this case: Texas, Alaska, Arkansas, Colorado, the District of Columbia, Delaware, Florida, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Missouri, Montana, Nebraska, Nevada, New Jersey, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Utah, and West Virginia.

B. **Rulings Under Review.** References to the rulings at issue appear in the Opening Brief for the Federal Trade Commission, filed on May 22, 2026.

C. **Related Cases**. The case has not previously been on review before this Court or any other court (except the district court) and amici States are not aware of any related cases pending in this Court or any other court.

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. iii

GLOSSARY ............................................................................................................... iv

TABLE OF AUTHORITIES ......................................................................................v

STATUTES AND REGULATIONS ....................................................................... vii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...............................1

INTERESTS OF AMICI CURIAE...........................................................................2

ARGUMENT .............................................................................................................4

I.   The FTC's interpretation of Section 13(b)(1) is supported by precedent from analogous State and private federal antitrust injunction suits. ..............................4

   A.   States and private plaintiffs are subject to a liability standard similar to the language of Section 13(b)(1). ........................................................................5

   B.   State and private plaintiff antitrust cases confirm that the injunctive liability standard can be met based on the facts  at the time of the complaint filing. ....................................................................................................................7

   C.   In amici States' experience, courts considering federal antitrust injunctions divide the analysis between liability and equitable remedies. .......11

   D.   The district court's collapsing of the Section 13(b)(1) violation pleading standard with equitable remedies was improper and caused it to overlook important evidence. ................................................................................................13

II.   Deciding liability based on the facts at the time of the complaint filing serves the public interest by defining antitrust laws, allowing for the efficient use of resources, and deterring delay and gamesmanship. ........................................14

   A.   A liability determination (even without a remedy) nevertheless deters bad conduct by other actors because it sends a message as to what is and is not permissible. ..........................................................................................................14

   B.   If the district court's interpretation of Section 13(b)(1) stands, it fragments FTC/State competition enforcement...............................................15

   C.   Evaluating ongoing or threatened violations based on the facts  at filing deters delay and gamesmanship, one of the Congressional purposes of Section 13(b)(1). .........................................................................................................17

CONCLUSION ........................................................................................................19

CERTIFICATE OF COMPLIANCE.....................................................................23

# GLOSSARY

| | |
|---|---|
| FTC | Federal Trade Commission |
| Section 2 | 15 U.S.C. § 2 (Sherman Act) |
| Section 13(b) | 15 U.S.C. § 53(b) (FTC Act) |
| Section 16 | 15 U.S.C. § 26 (Clayton Act) |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Colorado v. Google LLC,*
  Nos. 20-cv-3715, 20-cv-03010, Order (D.D.C. Dec. 6, 2021) ........................3, 12

*Conwood Co., L.P. v. U.S. Tobacco Co.,*
  290 F.3d 768 (6th Cir. 2002) ....................................................................................8

*Copperweld Corp. v. Indep. Tube Corp.,*
  467 U.S. 752 (1984) ................................................................................................10

*Dimmitt Agri Industries, Inc. v. CPC International, Inc.,*
  679 F.2d 516 (5th Cir. 1982) ..............................................................................8, 9

*FTC v. Motion Picture Advert. Serv. Co.,*
  344 U.S. 392 (1953) ................................................................................................10

*Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories Inc.,*
  386 F.3d 485 (2d Cir. 2004) ....................................................................................7

*Georgia v. Pennsylvania R. Co.,*
  324 U.S. 439 (1945) ..............................................................................................2, 5

*Graphic Products Distributors, Inc. v. ITEK Corp.,*
  717 F.2d 1560 (11th Cir. 1983) ..............................................................................8

*Kolon Industries, Inc. v. E.I. DuPont de Nemours & Co.,*
  748 F.3d 160 (4th Cir. 2014) ..................................................................................8

*Massachusetts v. Microsoft Corp.,*
  373 F.3d 1199 (D.C. Cir. 2004) ..............................................................................3

*New York v. Facebook, Inc.,*
  No. 20-cv-3589 (D.D.C. Dec. 21, 2020) ..........................................................3, 15

*Poller v. Columbia Broad. Sys., Inc.,*
  368 U.S. 464 (1962) ................................................................................................18

*Porter v. Warner Holding Co..,*
  328 U.S. 395 (1946) ................................................................................................17

*Schine Chain Theatres v. United States,*
  334 U.S. 110 (1948) ......................................................................................9, 10, 12

*Texas v. Google* ("*Google Ad Tech I*")
  No. 4:20-cv-00957 ....................................................................................................3

*Texas v. Penguin Group,*
  No. 1:12-cv-03394 (S.D.N.Y., Apr. 30, 2012) ......................................................3

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.,*
  959 F.2d 468 (3d Cir. 1992) ....................................................................................7

*United States v. Google LLC,*
    778 F. Supp. 3d 797 (E.D. Va. 2025) ...................................................................14

*United States v. Google LLC ("Google Ad Tech II"),*
    No. 23-cv-00108 ...................................................................................3, 11, 12, 14

*United States v. Grinnell,*
    384 U.S. 563 (1966).................................................................................................10

*United States v. Live Nation Entertainment, Inc.,*
    No. 24-cv-03973, Order (S.D.N.Y. May 2, 2025)..............................................12

*United States v. Microsoft,*
    253 F.3d 34 (D.C. Cir. 2001).............................................................3, 4, 11, 14, 15

*United States v. Oregon State Medical Society,*
    343 U.S. 326 (1952).............................................................................................5, 6

*United States v. W.T. Grant Co.,*
    345 U.S. 629 (1954).................................................................................................13

*Utah Pie Co. v. Continental Baking Co.,*
    386 U.S. 685 (1967)..................................................................................................8

*Utah v. Google,*
    No. 3:21-cv-05227, Compl. (N.D. Cal. July 7, 2021) ........................................3

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    395 U.S. 100 (1969)..............................................................................................5, 6

**Statutes and Rules:**

15 U.S.C.
    § 26..........................................................................................................2, 5, 6
    § 45.................................................................................................................10
    § 53(b)(1) ..........................................................................................................1
Fed. R. App. P. 29(a) .....................................................................................................4
Clayton Act § 16 ....................................................................................5, 7, 8, 9, 10, 15
FTC Act § 13(b)(1) ....................................... 1, 2, 4, 5, 6, 7, 9, 10, 13, 15, 17, 18, 19

**Other Authorities:**

Areeda & Turner, *III Antitrust Law*, 296 (1978) .......................................................9
H.R. Conf. Rep. 93-624, 93rd Cong. 1st Sess. 16-17 (1973) .................................17

## STATUTES AND REGULATIONS

All applicable statutes, etc., are contained in the Opening Brief for the Federal Trade Commission, filed on May 22, 2026.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The States of Texas, Alaska, Arkansas, Colorado, Delaware, Florida, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Missouri, Montana, Nebraska, Nevada, New Jersey, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Utah, West Virginia, and the District of Columbia  (collectively, "amici States") submit this brief in support of the appellant Federal Trade Commission (the "FTC") to urge reversal of the district court's decision. For all of the reasons explained by the FTC, this Court should hold that, under Section 13(b)(1) of the FTC Act, 15 U.S.C. § 53(b)(1), the FTC may seek an injunction based on Meta's monopolization of the personal social networking market in 2020—*i.e.*, at the time when the FTC filed its complaint. It was error for the district court to require the FTC to show a current or imminent antitrust violation in 2025, the time of verdict.

Amici States write separately to make two points. *First,* in analogous federal antitrust injunction cases brought by amici States and by private parties, courts first evaluate whether an antitrust violation has or is likely to occur, which can be based on the facts at the time of the filing of the complaint. Once liability is determined, courts then decide whether and which equitable remedies are appropriate to resolve the violation, based on the facts at the time of the remedies proceeding. Those precedents, rather than the district court's contrary approach, should guide this Court

1

in its interpretation of the analogous language in Section 13(b)(1). The district court improperly collapsed the liability and equitable remedies analyses by evaluating the existence of an ongoing or threatened violation based on the facts five years after the FTC filed its complaint.

*Second,* the district court's interpretation of Section 13(b) risks eroding proper enforcement of the antitrust laws. Establishing liability at the time of filing of the complaint deters anticompetitive conduct by would-be wrongdoers, even if no equitable remedy is deemed necessary. Further, if the district court's interpretation stands, it will fragment State and FTC competition enforcement by requiring different standards for establishing antitrust liability, which will squander law enforcement and judicial resources. In addition, evaluating an ongoing or threatened violation based on the facts at the time of the verdict incentivizes delays and gamesmanship by defendants, which is not an outcome this Court should endorse.

## INTERESTS OF AMICI CURIAE

Amici States have an interest in maintaining and promoting economic competition in their economies and providing the benefits of that competition to their citizens, including through enforcement of the federal antitrust laws and co-enforcement with the FTC. *See*, *e.g.*, 15 U.S.C. § 26; *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 447 (1945).

2

As part of that interest, amici States have considerable experience in promoting competition, including in technology markets. More than 25 years ago, a bipartisan coalition of States coordinated with the United States to file an antitrust complaint against Microsoft, leading to a landmark decision and decree. *See United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001) (en banc); *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199 (D.C. Cir. 2004). In the 2010s, another bipartisan State coalition worked with the United States to sue Apple and electronic book publishers, winning a verdict and settlement. *See Texas v. Penguin Group*, No. 1:12-cv-03394 (S.D.N.Y., Apr. 30, 2012). More recently, amici States have litigated or are in the process of litigating four separate antitrust enforcement actions against Google related to the harm its digital platforms have caused to competition, innovation, and consumers. *See, e.g., Texas v. Google*, No. 4:20-cv-00957 ("*Google Ad Tech*"), Compl. (E.D. Tex. Dec. 16, 2020), Dkt. 1; *United States v. Google LLC*, No. 23-cv-00108 ("*Google Ad Tech II*"), Order (E.D. Va. June 11, 2023), Dkt. 283 at 3-4; *Colorado v. Google LLC,* Nos. 20-cv-3715, 20-cv-03010, Order ("*Google Search*") (D.D.C. Dec. 6, 2021), Dkt. 264; *Utah v. Google*, No. 3:21-cv-05227, Compl. (N.D. Cal. July 7, 2021), Dkt. 1. And, of course, amici States brought their own challenge to Meta's acquisitions in *New York v. Facebook, Inc.*, No. 20-cv-3589 (D.D.C. Dec. 21, 2020), Dkt. 1.

Based on this experience, the amici States believe that the district court's decision undermines the FTC's Section 13(b)(1) enforcement authority and, by extension, threatens proper antitrust enforcement. Amici States file this brief to protect their businesses and residents from the harm that may result if the district court's decision is left to stand.

The amici States file this brief under Federal Rule of Appellate Procedure 29(a).

### ARGUMENT

I. **The FTC's interpretation of Section 13(b)(1) is supported by precedent from analogous State and private federal antitrust injunction suits.**

The States urge the Court to adopt the FTC's interpretation of Section 13(b)(1) that Section 13(b)(1) at most requires the FTC to plead that a defendant "is violating or about to violate" the antitrust laws, which the FTC can show by pointing to facts at the time of the complaint. *See* Appellant's Br. 19-29. Because State and private plaintiffs are subject to a similar liability standard for injunctive relief in the antitrust context, precedent from cases involving State and private plaintiffs illuminates the correct approach to Section 13(b)(1). The State and private cases—which include this Court's *Microsoft* decision—confirm that the violation pleading standard can be met based on the facts at the time of the complaint, not at the time of verdict. A distinct equitable remedies analysis should follow, which may consider, among other things, the market conditions at the time of a remedies determination. The district

4

court inappropriately collapsed the liability and equitable remedies analyses, requiring that Meta's liability be based solely on the facts at the time of verdict.

### A. States and private plaintiffs are subject to a liability standard similar to the language of Section 13(b)(1).

This Court should look to the Clayton Act, and the long history of case law interpreting that Act, when considering the appropriate standard under Section 13(b)(1). Specifically, States and private plaintiffs may bring lawsuits for injunctive relief under federal antitrust laws under Section 16 of the Clayton Act, 15 U.S.C. § 26. *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 447 (1945). Section 16 permits persons to "sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity." 15 U.S.C. § 26. The Supreme Court has interpreted this language to require States and private plaintiffs seeking an antitrust injunction to "demonstrate a significant threat of injury" from "a contemporary violation likely to continue or recur"[1] or "an impending violation" of the antitrust laws. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969).

---

[1] *Zenith Radio*'s citation makes clear that a "contemporary violation likely to continue or recur" is an ongoing violation. That language is from *United States v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952). *Compare Zenith Radio*, 395 U.S. at 130 (citing *Oregon State Med. Society*, 343 U.S. at 333), *with Oregon State Med. Society*, 343 U.S. at 333 ("All it takes to make the cause of action for relief by injunction is a real threat of future violation *or a contemporary violation of a nature likely to continue or recur*." (emphasis added)). And *Oregon State Medical Society* goes

Likewise, Section 13(b)(1) provides that the FTC "may bring suit" when it has reason to believe that a person "is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission":

> **Whenever the Commission has reason to believe—(1) that any person** . . . **is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission**, and that the enjoining thereof pending the issuance of a complaint . . . would be in the interest of the public—**the Commission** by any of its attorneys designated by it for such purpose **may bring suit in a district court of the United States to enjoin any such act or practice**. . . . Provided further, That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction.

15 U.S.C. § 53(b)(1) (emphasis added).

Comparing the two:

| FTC 13(b)(1) Language (15 U.S.C. § 53(b)(1)) | State and Private Liability Standard (15 U.S.C. § 26; *Zenith Radio*) |
|---|---|
| "is violating" *or* | "a contemporary violation likely to continue or recur," *i.e.*, an existing condition, *or* |
| "is about to violate" | "an impending violation" |

---

on to explain that injunctive relief "is to undo *existing* conditions, because otherwise they are likely to continue." 343 U.S. at 333 (emphasis added).

Thus, the Section 13(b)(1) pleading standard is similar to the liability standard for federal antitrust injunctive relief that States and private plaintiffs must meet.

### B. State and private plaintiff antitrust cases confirm that the injunctive liability standard can be met based on the facts  at the time of the complaint filing.

In cases cited by the district court or that evaluate private antitrust injunction suits applying the analogous Section 16 standard, *see supra* pp. 5-6, the Second, Third, Fourth, Fifth, Sixth, and Eleventh Circuits have decided whether antitrust laws are violated by looking at the facts at the time of complaint filing, without requiring that violations continue up to the time of verdict. Specifically, these courts examine whether the defendant has power in a relevant market by looking at facts at the filing of the complaint:

- In *Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories Inc.*, a case where the complaint was filed in 1998, the Second Circuit evaluated the market and market power based on evidence from 1995 through 1998. 386 F.3d 485, 502 (2d Cir. 2004), *cited with approval by* Op., Dkt. 693, 21.

- In *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, a case where the complaint was filed in January 1988, the Third Circuit looked at the defendant's market share for the years 1983 through 1987. 959 F.2d 468, 472-74, 481 (3d Cir. 1992) (*en banc*), *cited with approval by* Op. 24;

7

- In *Kolon Industries, Inc. v. E.I. DuPont de Nemours & Co.*, a case where the complaint was filed in 2009, the Fourth Circuit evaluated market power by looking at the years between 2006 through 2009. 748 F.3d 160, 163 (4th Cir. 2014), *cited with approval by* Op. 86-87.

- In *Dimmitt Agri Industries, Inc. v. CPC International, Inc.*, the Fifth Circuit used pre-complaint market share numbers to evaluate market power. 679 F.2d 516, 519, 527 n.9 (5th Cir. 1982), *cited with approval by* Op. 86.

- In *Conwood Co., L.P. v. U.S. Tobacco Co.*, a case where the complaint was filed in 1998, the Sixth Circuit evaluated monopoly power by looking at a "relevant period" ending in 1998. 290 F.3d 768, 781 (6th Cir. 2002).

- In *Graphic Products Distributors, Inc. v. ITEK Corp.*, a case where the complaint was filed in 1977, the Eleventh Circuit evaluated market power by looking at a period ending in 1976. 717 F.2d 1560, 1570 (11th Cir. 1983).

The States are not aware of any Circuit that has applied Section 16 to conclude that a defendant lacks monopoly power based only on the facts at the time of verdict. Further still, when the Supreme Court has considered injunctions brought by a private party, it, too, has evaluated antitrust liability as of the time the complaint was filed. In *Utah Pie Co. v. Continental Baking Co.*, a suit that involved injunctive relief, the Court evaluated the antitrust violation as of the time the complaint was filed—*i.e.*, in 1961—not at the time of the jury trial. 386 U.S. 685, 689 (1967).

These holdings that States and private plaintiffs can qualify for antitrust injunctive relief by showing a violation at or before the time of the complaint are consistent with two long-standing antitrust principles.

*First*, monopoly power is evaluated "at the time of [the defendant's] exclusionary conduct." *Dimmitt Agri Indus.*, 679 F.2d at 530 n.13 (5th Cir. 1982) (quoting Areeda & Turner, III Antitrust Law ¶ 810 at 296 (1978)). The principle that monopoly power is evaluated at the time of the exclusionary conduct, combined with the Section 16/Section 13(b)(1) standard that exclusionary conduct is ongoing or threatened at the time of the complaint, means that, for purposes of showing a violation for injunctive relief, monopoly power can be evaluated at the time of the complaint. *See* Appellant Br. 20-22.

*Second*, in antitrust cases, injunctions to resolve "past violations" and deprive defendants of the benefits of past violations are part of courts' equitable powers, as the Supreme Court forcefully explained in *Schine Chain Theatres v. United States*:

> In this type of case we start from the premise that an injunction against future violations is not adequate to protect the public interest. If all that was done was to forbid a repetition of the illegal conduct, those who had unlawfully built their empires could preserve them intact. They could retain the full dividends of their monopolistic practices and profit from the unlawful restraints of trade which they had inflicted on competitors. Such a course would make enforcement of the [Sherman] Act a futile thing unless perchance the United States moved in at the incipient stages of the unlawful project.

334 U.S. 110, 128, *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984). The *Schine* Court went on to reason that one purpose of divestiture, a "penalt[y] that Congress has provided in the antitrust laws," is to "deprive[] a defendant of the gains from his wrongful conduct," or "undo what could have been prevented had the defendants not outdistanced the government in their unlawful project." *Id*. at 128; *see United States v. Grinnell*, 384 U.S. 563, 577 (1966) ("adequate relief in a monopolization case should . . . deprive the defendants of any of the benefits of the illegal conduct").[2] Thus, even after an antitrust violation has ended, the Supreme Court has recognized that injunctive relief may be necessary to resolve lingering harms.

In light of the similar standards for Section 16 and Section 13(b)(1) and related precedent and principles, this Court should conclude that the FTC can show a violation for the purposes of Section 13(b)(1) based on the facts as of the time of the complaint. Especially because no Circuit has yet addressed the Section 13(b)(1) standard as applied to injunctive relief in the antitrust context, the district court erred by ignoring the decades of Supreme Court and Circuit precedent interpreting the analogous Section 16 standard.

---

[2] *Grinnell* and *Schine* both address the Sherman Act, a federal antitrust statute. *See Grinnell*, 384 U.S. at 577; *Schine*, 334 U.S. at 128. The FTC enforces the Sherman Act through its authority under 15 U.S.C. § 45. *See FTC v. Motion Picture Advert. Serv. Co.*, 344 U.S. 392, 397 (1953).

### C. In amici States' experience, courts considering federal antitrust injunctions divide the analysis between liability and equitable remedies.

In the amici States' experience, courts considering federal antitrust cases seeking equitable relief frequently separate these issues into two distinct inquiries: first to establish liability, and then to determine the appropriate remedy to correct the violation.

A plaintiff must first obtain a verdict in its favor on the existence of an antitrust violation. Then, "additional fact discovery," including an evidentiary hearing, may be necessary for a "court to decide what, if any equitable remedies are appropriate." *Google Ad Tech II*, Dkt. 283, at 3-4. The violation can be shown by the circumstances from the time of complaint, but the remedy is determined at the time of verdict.

For example, Circuit and district courts (including this Court and the District Court for the District of Columbia) have applied this two-step liability-equitable remedies procedure in the following cases brought by amici States since 2000:

- In *United States v. Microsoft Corp*., this Court vacated an equitable remedies decree for the "independent reasons" that (a) this Court had "revised the scope of Microsoft's liability" which might "affect the remedies" and (b) the district court had "failed to hold a remedies-specific evidentiary hearing when there were disputed facts." 253 F.3d 34, 394 (D.C. Cir. 2001) .

11

- In *Google Search*, the District Court for the District of Columbia bifurcated trial between a liability/damages phase and an equitable remedies phase, with the remedies phase involving additional discovery, experts, and a 15-day trial. Order (Dec. 6, 2021), Dkt. 264; Order (Sept. 25, 2024) Dkt. 1047; Transcripts (April 21, 2025 through July 9, 2025), Dkts. 1393-1420.

- In *Google Ad Tech II*, the Eastern District of Virginia bifurcated trial between a liability/damages phase and an equitable remedies phase, with the remedies phase involving additional discovery, experts, and a two-week long trial. *See* Order (E.D. Va. July 11, 2023) Dkt. 283, at 1-4; Order (June 10, 2025) Dkt. 1470; Transcripts (Sept. 22, 2025 through Oct. 6, 2025), Dkts. 1789-1808.

- And in *United States v. Live Nation Entertainment, Inc.*, the Southern District of New York bifurcated trial between a liability/damages phase and an equitable remedies phase. No. 24-cv-03973, Order (S.D.N.Y. May 2, 2025), Dkt. 543, at 21-22.

Outside of the amici States' experience, but still in the antitrust equitable remedies context, the *Schine* Court likewise remanded for the district court to make appropriate findings on what "the rewards of the conspiracy were" and "the preferable way of causing appellants to surrender them," up to "divestiture of [companies] unlawfully acquired." 334 U.S. at 128-30. And further reinforcing the two-step analysis, a court may still order injunctive relief even after a defendant

12

claims to be in compliance with the antitrust laws, considering the "bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1954). A separate equitable remedies analysis gives courts time for a full assessment of the current relevant facts and allows remedies to be properly tailored.

### D. The district court's collapsing of the Section 13(b)(1) violation pleading standard with equitable remedies was improper and caused it to overlook important evidence.

Ignoring the principles and the analogous cases, the district court held that the FTC "must prove that Meta has monopoly power <u>now</u>," Op. 24 (emphasis in original). Likewise, it failed to consider or apply the equitable remedies factors before concluding, in effect, that no remedy was warranted. *See* Op. Both were errors.

One result of district court's failure to evaluate liability separately from equitable remedies is that it swept aside evidence of consumer harm from Meta's monopoly. For example, despite acknowledging that consumer surveys show "genuine problems with Facebook's privacy protections" had "inflicted the biggest sentiment decline in the company's history," the district court airily concluded that it is "unpersuasive" that "worsening sentiment shows a worsening product." Op. 31. The district court also brushed off the fact that consumers "report on surveys" that they "want more friend posts." Op. 32.

13

The district court's refusal to take consumers at their word about what harms their own welfare is at odds with the State's experience as enforcers. The district court's refusal to take customer complaints into account is also at odds with the States' experience in other federal courts. In *Google Ad Tech II*, a district court concluded that Google's degradation of its publisher ad server "despite negative publisher feedback" was a qualitative harm that showed monopoly power. *United States v. Google LLC*, 778 F. Supp. 3d 797, 852 (E.D. Va. 2025). Just as "publisher feedback" reflects consumer harm, so does individual "sentiment." That sentiment should have been considered as part of a proper remedies analysis.

## II. Deciding liability based on the facts at the time of the complaint filing serves the public interest by defining antitrust laws, allowing for the efficient use of resources, and deterring delay and gamesmanship.

Deciding liability based on the facts at the time of the complaint also serves the public interest by defining antitrust laws, conserving law enforcement resources, and deterring defendants' delay and gamesmanship.

### A. A liability determination (even without a remedy) nevertheless deters bad conduct by other actors because it sends a message as to what is and is not permissible.

In *Microsoft*, a case in which many amici States were co-plaintiffs, this Court recognized that there may be "practical difficulties" in applying the federal monopolization law to "technologically dynamic markets." *United States v. Microsoft Corp.*, 253 F.3d at 49. But this Court was clear that those difficulties

14

should be addressed when "crafting injunctive *remedies*" and should not affect liability determinations: "Even in those cases where forward-looking remedies appear limited, the Government will continue to have an interest in defining the contours of the antitrust laws so that law-abiding firms will have a clear sense of what is permissible and what is not." *Id.* (emphasis added). For that reason, among others, this Court rejected Microsoft's argument that monopoly power should be assessed differently in technologically dynamic markets. *See id.* at 49-50, 56-57.

The Court should similarly reject Meta's re-imagination of monopoly power here. Regardless of whether the "remedies appear limited," evaluating Meta's liability based on the facts at the time of the complaint usefully defines "the contours of the antitrust laws" for other litigants, including other enforcers like the amici States. *Id.* at 49. In doing so, it deters bad conduct by other actors because it sends a message as to what is and is not permissible.

### B. If the district court's interpretation of Section 13(b)(1) stands, it fragments FTC/State competition enforcement.

If the States' Section 16 injunctive liability standard for evaluating antitrust violations is not the same as the one for the FTC's Section 13(b)(1), then the district court's decision fragments antitrust enforcement. The States regularly work with the FTC to co-enforce the federal antitrust laws, including against Meta's conduct here. *See, e.g., New York v. Facebook, Inc.*, No. 20-cv-3589 (D.D.C. Dec. 21, 2020). Thus, if the district court's holding remains undisturbed, fact-finders evaluating joint or

15

parallel State/FTC injunction suits would have to evaluate liability at two distinct time periods: up to the time of the complaint for federal antitrust injunction claims brought by States, and at the time of the trial or verdict for federal antitrust claims brought by the FTC. That dual standard would be difficult to apply for judges and juries alike, generating the possibility of contradictory case outcomes and discouraging co-enforcement between the States and the FTC.

Discouraging co-enforcement wastes investigatory and litigation resources. FTC enforcement enables States to focus on other unlawful conduct, broadening the range of conduct that is investigated and pursued. If the FTC were unable to seek injunctions based on the facts at complaint filing, the burden of resolving lingering effects would fall entirely to the States. That burden, in turn, would require the States to either re-direct resources or leave their residents harmed by anticompetitive conduct without relief. The FTC's ability to seek injunctions based on the facts at the time of the complaint filing is thus an important supplement to State action.

### C. *Evaluating ongoing or threatened violations based on the facts at filing deters delay and gamesmanship, one of the Congressional purposes of Section 13(b)(1).*

Courts evaluating whether a statute authorizes an injunctive remedy may consider whether the remedy is "appropriate and necessary . . . to give effect to [a statute's] purposes." *Porter v. Warner Holding Co..* 328 U.S. 395, 400 (1946).

Here, Congress made explicit findings to explain that its purpose in enacting Section 13(b)(1) was to avoid "significant delays" by providing the FTC with "requisite authority to insure prompt enforcement of the laws the [FTC] administers:"

> The Congress hereby finds that the investigative and law enforcement responsibilities of the Federal Trade Commission have been restricted and hampered because of inadequate legal authority to enforce subpoenas and to seek preliminary injunctive relief to avoid unfair competitive practices. The Congress further finds that as a direct result of this inadequate legal authority significant delays have occurred in a major investigation into the legality of the structure, conduct, and activities of the petroleum industry, as well as into other major investigations designed to protect the public interest. It is the purpose of this Act to grant the Federal Trade Commission the requisite authority to insure prompt enforcement of the laws the Commission administers, by granting statutory authority to directly enforce subpoenas issued by the Commission and to seek preliminary injunctive relief to avoid unfair competitive practices.

H.R. Conf. Rep. 93-624, 93rd Cong. 1st Sess. 16-17 (1973) (emphasis added).

The district court's decision subverts that purpose. Under the district court's interpretation, a defendant in a Section 13(b)(1) lawsuit can try to avoid liability simply by delaying the verdict until the defendant can argue that market conditions

17

have changed. *See* Op. 24 ("the FTC must prove that Meta has monopoly power now") (emphasis in original). Rather than provide the FTC with the "requisite authority" to avoid "significant delay," then, the district court's interpretation of Section 13(b)(1) gives defendants a unique incentive to engage in such delay.

The district court's decision also increases the incentives for gamesmanship. If a violation turns on the market facts at trial or verdict, it turns on the market facts as of the defendants' last document and data production. That means that the district court's decision gives defendants—who control most of the information in an antitrust case, *see Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962) ("proof is largely in the hands of the alleged conspirators")—enormous incentives to manipulate the end of the discovery process, rather than use it to produce evidence that accurately establishes the truth or falsity of the complaint's allegations. To give a few simple examples of what might happen if liability depends on the market facts at the time of verdict:

- Defendants may seek to avoid refreshing discovery before trial if their market shares go up; on the other hand, they will be eager to dump new information on plaintiffs if their market shares go down.

- Defendants may carefully craft their internal documents and forward-looking market strategy to achieve certain market facts as of the time of trial.

- Defendants may seek to time their final productions around certain events—for example, regularly-held annual sales or months with significant employee turnover—that minimize their apparent market power.

As such, permitting violations in federal antitrust injunction cases to turn on the facts at the time of trial or at the time of verdict makes it more likely that violations will be decided based on gamesmanship, rather than market realities. This is an independent reason that the best interpretation of Section 13(b)(1) is that, for the purposes of injunctive relief, a violation can be shown based on the facts as of the time of the complaint.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment and remand for further proceedings.

Respectfully submitted,

KEN PAXTON
Attorney General for the State of Texas

THOMAS D. YORK
Chief, Antitrust Division

BRENT WEBSTER
First Assistant Attorney General

 /s/ Katherine S. Dannenmaier
KATHERINE S. DANNENMAIER
Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General
for Civil Litigation

Texas Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 803-6803
Fax: (512) 473-8301
thomas.york@oag.texas.gov
kay.dannenmaier@oag.texas.gov

*Counsel for Amici Curiae*

*Additional counsel listed on next page.*

May 29, 2026

*On behalf of*:

CORI MILLS
*Acting Attorney General*
State of Alaska

TIM GRIFFIN
*Attorney General*
State of Arkansas

PHILIP J. WEISER
*Attorney General*
State of Colorado

KATHLEEN JENNINGS
*Attorney General*
State of Delaware

BRIAN L. SCHWALB
*Attorney General*
District of Columbia

JAMES UTHMEIER
*Attorney General*
State of Florida

RAÚL R. LABRADOR
*Attorney General*
State of Idaho

THEODORE E. ROKITA
*Attorney General*
State of Indiana

BRENNA BIRD
*Attorney General*
State of Iowa

KRIS W. KOBACK
*Attorney General*
State of Kansas

RUSSELL COLEMAN
*Attorney General*
Commonwealth of Kentucky

LIZ MURRILL
*Attorney General*
State of Louisiana

ANTHONY BROWN
*Attorney General*
State of Maryland

AUSTIN KNUDSEN
*Attorney General*
State of Montana

CATHERINE L. HANAWAY
*Attorney General*
State of Missouri

MICHAEL T. HILGERS
*Attorney General*
State of Nebraska

AARON D. FORD
*Attorney General*
State of Nevada

JENNIFER DAVENPORT
*Attorney General*
State of New Jersey

DREW WRIGLEY
*Attorney General*
State of North Dakota

DAVE YOST
*Attorney General*
State of Ohio

GENTNER DRUMMOND
*Attorney General*
State of Oklahoma

DAN RAYFIELD
*Attorney General*
State of Oregon

DAVID W. SUNDAY, JR.
*Attorney General*
Commonwealth of Pennsylvania

ALAN WILSON
*Attorney General*
State of South Carolina

MARTY JACKLEY
*Attorney General*
State of South Dakota

JONATHAN SKRMETTI
*Attorney General*
State of Tennessee

DEREK BROWN
*Attorney General*
State of Utah

JOHN B. MCCUSKEY
*Attorney General*
State of West Virginia

23

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 4,470 words, excluding exempted parts. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

 */s/ Katherine S. Dannenmaier*
KATHERINE S. DANNENMAIER

23